# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 08-3043-MWB |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING SENTENCING** |
| GARY M. VISSER, | |
| Defendant. | |

_____

Defendant Gary M. Visser came before me for sentencing on April 6, 2009, on his guilty plea, without a plea agreement, to a "felon in possession of a firearm" charge in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) involving possession of eleven firearms after conviction, in 1994, on a state charge of operating a motor vehicle while intoxicated (third offense). The main fighting issue at Visser's sentencing hearing was whether or not he was entitled to the reduction of his base offense level to 6 under the "sporting and collecting" exception in U.S.S.G. § 2K2.1(b)(2), where he had pawned several of the firearms in his collection. Visser also filed an alternative motion for downward variance if the court determined that he was not entitled to the "sporting and collecting" reduction. The prosecution opposed the § 2K2.1(b)(2) reduction of Visser's offense level and his request for a downward variance.

I found that Visser was entitled to the § 2K2.1(b)(2) reduction in his offense level and, in the alternative, that a downward variance from his advisory guideline range without that reduction was appropriate. Therefore, I sentenced him to three years of probation including one year of home detention with electronic monitoring, a fine, and certain other

terms and conditions. I now enter this written memorandum opinion and order to clarify and amplify the rationale for these determinations that I provided on the record at the time of Visser's sentencing hearing.

Although Visser was charged with illegal possession of eleven firearms, the Presentence Investigation Report (PSIR) and the evidence presented at Visser's sentencing hearing demonstrated that Visser had, at some point after his predicate state conviction, possessed as many as twenty-six firearms, which he had accumulated since the age of 13 (Visser is now 50). Some of the firearms were vintage, antique, or otherwise had collector appeal, and Visser credibly testified[1] that the reason he possessed all of them was that he "liked them." Visser had fired a Winchester Model 1980 identified in the Indictment a dozen times on one occasion, for target shooting, several years before it was seized, which is the last time Visser recalls firing any firearm. Visser admitted that he had also used some of the firearms for hunting many years ago, and the PSIR states that Iowa Department of Natural Resources records indicate that he had a small game hunting license in 2002. Nevertheless, Visser also testified, again credibly and without contradiction, that he had never fired most of the other firearms at issue. Visser also had ammunition at his residence, also as collector's items or because it came in collector's boxes, but had not used any of that ammunition. None of the firearms were loaded when seized, and Visser testified that he did not keep them loaded or keep ammunition for them near them.

Visser had sold approximately fifteen of his firearms at an auction in Latimer, Iowa, in and prior to October 2006 to raise money to pay medical bills resulting from his bout with laryngeal cancer. Visser's cancer treatment had involved several surgeries and

---

[1]As a result of treatment for laryngeal cancer, Visser can only speak by covering a large hole in his throat. The court was able to understand him, although at times just barely, and to assess his testimony.

considerable follow-up and on going treatment. Of the remaining eleven firearms—which were the firearms at issue on the felon in possession of a firearm charge—Visser had subsequently pawned at least four between September and November 2006, to obtain money to help pay medical expenses and to buy a birthday present for his daughter. Visser had not redeemed any of the pawned firearms.

The statute under which Visser was convicted provides for a term of incarceration of 0 to 10 years. The parties agree, and I find, that, without a reduction in his offense level pursuant to U.S.S.G. § 2K2.1(b)(2), Visser's adjusted offense level would be 17 (base offense level of 14, with a 6-level increase for possession of more than 25 firearms, and a 3-level reduction for acceptance of responsibility), his criminal history category would be III, and his guidelines sentencing range would be 30 to 37 months. However, with a § 2K2.1(b)(2) reduction, Visser's adjusted offense level would be 4 (with an adjustment to 6 and a 2-level reduction for acceptance of responsibility), his criminal history category would be III, and his guidelines sentencing range would be 0 to 6 months. The probation officer scored Visser's sentence using the § 2K2.1(b)(2) reduction and recommended a sentence of three years probation with no incarceration.[2]

Visser argued that he possessed the firearms solely as a collector or, more rarely, as a sportsman, although it had been some time since he had used any firearm for hunting. He asserted that the manner in which he had acquired or disposed of the firearms did not change the purpose of his possession of the firearms. Thus, he argued that the probation officer had properly scored his offense level as 6, before any adjustment for acceptance

---

[2]The probation officer scored Visser's total offense level as 4 after a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Visser did not qualify for a further one-level reduction for acceptance of responsibility, pursuant to § 3E1.1(b), because his offense level prior to application of § 3E1.1(a) was less than 16.

of responsibility, by applying § 2K2.1(b)(2). In contrast, the prosecution argued that Visser cannot show that his purpose in possessing the firearms at issue was *solely* for lawful sporting purposes or collection, so that he is not entitled to the § 2K2.1(b)(2) reduction, citing *United States v. Habdash*, 408 F.3d 1080, 1082 (8th Cir. 2005). More specifically, the prosecution argued as follows:

> One of defendant's purposes in possessing firearms was to pawn them. "[P]awning a weapon does not qualify as a sporting purpose or as collection." *United States v. Keever*, 57 Fed.Appx. 719, 720, 2003 WL 1192591 (8th Cir. 2003) (unpublished) (citations omitted). Since defendant did not possess all of the firearms solely for lawful sporting purposes or collection, he does not qualify for a lower offense level under USSG § 2K2.1(b)(2).

Government's Sentencing Memorandum And Resistance To Motion For Variance (docket no. 25), 2 (footnote omitted).

The sentencing guideline for unlawful possession of a firearm otherwise applicable here provides for a base offense level of 14. *See* U.S.S.G. § 2K2.1(a)(6) (the base offense level is "**14**, if the defendant (A) was a prohibited person at the time the defendant committed the instant offense; or (B) is convicted under 18 U.S.C. § 922(d)"). However, the "sporting and collecting" exception in question here provides for a reduction in a defendant's offense level, as follows:

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4) or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level **6**.

U.S.S.G. § 2K2.1(b)(2); *see also United States v. Lussier*, 423 F.3d 838, 842 (8th Cir. 2005) ("Section 2K2.1(b)(2) allows a decrease in offense level if the defendant possessed

all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition."). The defendant has the burden of proving that this reduction in offense level should apply. *Lussier*, 423 F.3d at 843.

As the Eighth Circuit Court of Appeals has explained,

> The applicability of this section [§ 2K2.1(b)(2)] is determined by relevant surrounding circumstances, which include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history, and the extent to which possession was restricted by local law. U.S.S.G. § 2K2.1 cmt. n.10 [now n.6]. *See also United States v. Ramirez-Rios,* 270 F.3d 1185, 1187 (8th Cir. 2001) ("[i]n determining whether § 2K2.1(b)(2) applies, the focus of the inquiry is the 'intended lawful use'"). As we explained in *United States v. Mendoza-Alvarez,* 79 F.3d 96, 99 (8th Cir. 1996), "an 'otherwise unlawful use' under § 2K2.1(b)(2) must be some action similar to an 'unlawful discharge,' such as using to gun to threaten or beat another person." *Mendoza-Alvarez* also warns that "[t]he context of § 2K2.1(b)(2) also supports an interpretation of 'otherwise unlawfully use' requiring something more than a bare violation of . . . law." *Mendoza-Alvarez,* 79 F.3d at 99.

*Lussier*, 423 F.3d at 843 n.4; *see also United States v. Bertling*, 510 F.3d 804, 811 (8th Cir. 2007) (unlawful user of controlled substances in possession of a firearm case citing the same factors and burden of proof for determining the application of § 2K2.1(b)(2), also citing application note 6, which was formerly note 10).

In recent cases, the Eighth Circuit Court of Appeals has considered all of the circumstances surrounding the defendant's possession of the firearm, including the defendant's actual use of the firearm, to determine whether or not the defendant possessed

the firearm solely for sporting or collecting purposes. *See Bertling*, 510 F.3d at 811 (the defendant was disqualified from application of the reduction, even though he asserted that he used his handgun only for target shooting, and kept it locked in his house, because the evidence showed that the defendant also used the handgun for personal protection); *Lussier*, 423 F.3d at 843 (holding that the defendant was disqualified from application of the "sporting and collecting" reduction, even though his possession and use of the firearm during a "scouting trip" would have been consistent with a sporting purpose, because his "act of picking up the rifle and moving it from behind the seat and placing it on the passenger side of the seat while in [his former girlfriend's] driveway could have reasonably been seen as having a purpose other than sporting when done in conjunction with an obvious violation of [the former girlfriend's] order of protection" against the defendant); *and compare United States v. Massey*, 462 F.3d 843, 846 (8th Cir. 2006) (upholding as not clearly erroneous the sentencing court's conclusion that the reduction applied, even though the prosecution argued that the weapons were used in relation to drug offenses, where the sentencing court found that dispersal of the firearms throughout the defendant's house was not necessarily inconsistent with how a gun enthusiast might act, that the evidence that a firearm was kept in close proximity to drugs or drug paraphernalia was equivocal, and that the defendant had continued to purchase firearms after his drug arrest, when there was no apparent connection to drug activity).

The prosecution cites *United States v. Habdash*, 408 F.3d 1080, 1082 (8th Cir. 2005), for the proposition that the defendant must prove that *every* firearm at issue was possessed *solely* for the purpose of collecting (or sporting), for the reduction to apply. The prosecution also quotes the portion of *Habdash* in which the court found that the reduction did not apply where the defendant did not even keep all six of the firearms, but gave one away and sold another. *Id*. The prosecution fails to explain, however, that in *Habdash*,

the court found that there was also nothing in the record that the defendant stored or used the guns in a manner reflecting a collecting purpose and, indeed, his counsel acknowledged during the sentencing hearing that he never intended to argue that "a lawful collection" was involved, and further admitted that it was "very likely [the defendant] 'had nothing like that in mind when he stole the guns.'" *Habdash*, 408 F.3d at 1083. Thus, *Habdash* does *not* stand for the proposition that a defendant loses the "sporting and collecting" reduction if he sells, gives away, or otherwise disposes of some or all of the firearms from a collection, as the prosecution seems to suggest, because the dispositive issue in *Habdash* was that the defendant failed to establish that he had a collecting purpose in the first place.

Even more misleading is the prosecution's reliance on a single phrase lifted out of context from the unpublished decision of the Eighth Circuit Court of Appeals in *United States v. Keever*, 57 Fed.Appx. 718, 2003 WL 1192591 (8th Cir. 2003). The prosecution cites *Keever* for the proposition that "pawning a weapon does not qualify as a sporting purpose or as collection." *Keever*, 57 Fed.Appx. at 720, 2003 WL 1192591 at *1. The full sentence from which the prosecution artfully extracted this quotation belies the prosecution's contention that it stands for a *legal proposition* that pawning a weapon does not qualify as a sporting or collecting purpose. That sentence states, "*[The defendant] possessed the gun for the sole purpose of selling it to a pawn shop*, and pawning a weapon does not qualify as a sporting purpose or as collection." *Id.* (emphasis added). Thus, the court in *Keever* specifically determined that the defendant possessed the firearm *solely* for the purpose of pawning it, and *then* held that pawning a weapon *under those circumstances* did not qualify as a sporting or collecting purpose. Moreover, the prosecution's "legal proposition" argument becomes even more obviously misleading, when the entirety of the extraordinarily short decision in *Keever* is examined. Specifically, the court noted that the defendant "sold a gun to a pawn shop on behalf of the gun's owner," and that "[the

7

defendant] contend[ed] he qualifie[d] for [a § 2K2.1(b)(2)] reduction because the gun's owner told [the defendant] his uncle had used the gun for hunting." *Keever*, 57 Fed.Appx. at 719-20, 2003 WL 1192591 at *1. Thus, in *Keever*, it was not even the defendant or the gun owner who had purportedly used the firearm solely for a qualifying purpose, but someone from whom the owner had obtained the firearm before giving it to the defendant to pawn. Thus, as in *Lussier*, *Bertling*, and *Massey*, the Eighth Circuit Court of Appeals in *Keever* considered all of the circumstances, including the defendant's actual use of the firearm and the purpose for which the defendant possessed it, to determine whether the "sporting and collecting" reduction applied, and in *Keever*, the court found that the defendant's sole purpose for possessing the firearm and his sole use of the firearm was to pawn it. *Id.*

Consideration of all of the circumstances in these cases, including the actual purpose of the defendant's possession and actual use of the firearm, is consistent with application note 6 (formerly 10) to § 2K2.1, which provides that application of § 2K2.1(b)(2) must be determined "by the surrounding circumstances," and the further explanation that "relevant surrounding circumstances" include "the location and circumstances of possession and actual use," among other things. U.S.S.G. § 2K2.1, cmt. n.6. The Eighth Circuit Court of Appeals explicitly recognized that all of the "surrounding circumstances" are relevant, relying on this application note, for example, in *Lussier*, 423 F.3d at 843 n.4, and *Bertling*, 510 F.3d at 811. Thus, the prosecution's focus on an isolated portion of a statement in *Keever* ignored the application note and Eighth Circuit precedent, and stripped the statement and the decision of the court in *Keever* of any indication of consideration of "relevant surrounding circumstances," including specifically the "circumstances of possession and actual use."

Here, I find that well before and at the time of his arrest, Visser possessed the firearms in question for collecting purposes and that any exception to the collecting purpose was for sporting purposes. Visser had a comparatively large number of firearms of various makes and models, although all that he had left at the time of his arrest were .22 caliber rifles, suggesting a collector's interest in a particular type of firearm; the quantities and types of ammunition in his possession, Visser credibly explained, and the prosecution did not dispute, were collector's items or came in collector's boxes, but had not been used; Visser testified, and the prosecution again did not dispute, that several of the firearms were located under his bed, because he was renovating his basement where his gun safe was located; his possession and actual use of firearms reflects solely a collector's or sportsman's interest in the firearms; there is no evidence that his possession was restricted by local law; and nothing in his criminal history suggests offenses associated with firearm use. U.S.S.G. § 2K2.1 cmt. n.6 (identifying these factors as "relevant surrounding circumstances" for determining the applicability of § 2K2.1(b)(2)); *Lussier*, 423 F.3d at 843 n.4 (same). There is also no evidence that Visser ever "unlawfully discharge[d] or otherwise unlawfully use[d] such firearms or ammunition." U.S.S.G. § 2K1.1(b)(2) (final requirement for a § 2K2.1(b)(2) reduction). Thus, the question is whether someone who otherwise would qualify for the "collecting and sporting" reduction pursuant to § 2K2.1(b)(2) loses that reduction by pawning some of the firearms in his collection. Contrary to the prosecution's misleading citation of *Keever*, there is no controlling authority from the Eighth Circuit Court of Appeals on that question.

There are admittedly numerous cases—none of which were cited by the prosecution—holding that a defendant who had pawned a firearm or firearms did not qualify for the § 2K2.1(b)(2) reduction, but in many of those cases, what disqualified the defendant was that he possessed the firearms *solely* for the purpose of pawning them, or

possessed them for some competing purpose besides sporting and collecting, which was facilitated by the pawning, not simply that the defendant pawned the firearms that he otherwise possessed for a qualifying purpose. *See United States v. Leleaux*, 240 Fed.Appx 666, 668-70, 2007 WL 2051979, *2-*3 (5th Cir. 2007) (where the defendant's actual possession consisted solely of his pawning a shotgun that was an heirloom owned by his father, who used it solely for sporting purposes, pawning the firearm was inconsistent with the defendant's claimed purpose of having the firearm remain in the family, and the defendant admitted that he intended to "get rid of it," coupled with his lengthy violent criminal history, albeit not involving gun violence, the defendant failed to meet his burden to prove he was entitled to a § 2K2.1(b)(2) reduction); *United States v. Williams*, 76 FedAppx. 54, 55, 2003 WL 22146145, *2 (6th Cir. 2003) ("Williams did not possess the firearm "solely" for sporting purposes, because he acknowledged that he took possession of the firearm in order to pawn it in exchange for cash. If a defendant possessed a firearm while selling it to a pawnshop to generate cash, then that is not possession 'solely for lawful sporting purposes or collection.' Hence, the district court properly declined to reduce Williams's base offense level under § 2K2.1(b)(2)." (citations omitted)); *United States v. Solomon*, 274 F.3d 825, 828-29 (4th Cir. 2001) (where the defendant possessed a "Saturday Night Special" for a few days before pawning it, and the district court found no evidence that the weapon had been used for any purpose, there was no factual basis to support a § 2K2.1(b)(2) reduction); *United States v. Clingan*, 254 F.3d 624, 626 (6th Cir. 2001) (the defendant did not qualify for the reduction where he possessed 13 firearms for only 3 months, none of the firearms were antiques or had other special value, and he actually sold six to pawnshops for the purpose of raising cash, so that the defendant "did not collect the firearms solely for the purpose of amassing a gun collection, but for the competing purpose of converting used automobiles into currency by using firearms as

bartering tools"); *but see United States v. Gifford*, 261 Fed.Appx 775, 775, 2008 WL 148872, *1 (5th Cir. 2008) (although the defendant inherited his father's firearms collection, he pawned numerous firearms over the course of several months, which the court held was inconsistent with his stated goal of serving only as a caretaker of the collection until it could be transferred to his mother, and the court held that pawning firearms to obtain money was not use in sporting or collecting, so he did not qualify for a § 2K2.1(b)(2) reduction); *United States v. Caldwell*, 431 F.3d 795, (11th Cir. 2005) (holding that "a defendant must possess the firearm *solely* for sporting purposes to qualify for a reduction under U.S.S.G. § 2K2.1(b)(2)" and, consequently, "that pawning a firearm, whether or not the firearm was owned for sporting purposes, does not meet the plain language of the [sic] § 2K2.1(b)(2)."); *United States v. Fredman*, 61 Fed.Appx. 82, , 2003 WL 1605890, * (4th Cir. 2003) (concluding that, in light of the plain language of § 2K2.1(b)(2), the defendant was not eligible for the reduction, because he pawned the firearms, explaining that "[e]ven though he may be a sportsman, [the defendant] is not entitled to a reduction under § 2K2.1(b)(2), because he did not possess the firearms exclusively for sporting or collecting purposes").

Even to the extent that decisions of other courts could be read to hold that merely pawning firearms deprives one who would otherwise qualify for the "sporting and collecting" exception of an offense level reduction, the better reasoned position, in my view, is that taken, for example, by the Third Circuit Court of Appeals in *United States v. Collins*, 313 F.3d 1251 (3d Cir. 2002). In *Collins*, the defendant "used his rifle as collateral in two isolated instances to secure repairs to his automobile," which the prosecution contended was inconsistent with possession "'*solely* for lawful sporting purposes.'" 313 F.3d at 1254 (quoting § 2K2.1(b)(2), with emphasis added by that court). The court noted that the guideline requires the defendant to show both *possession* solely

for the specified purposes *and* no unlawful *use*. *Id.* Thus, the court concluded that the guideline should not be interpreted to collapse the distinction between the "possession" and "use" requirements. *Id.*

As to the "possession" element, the court in *Collins* found that the guideline did not indicate whether "purpose" of the possession was to be determined as of a particular moment or within the entire context of the defendant's possession, but that note 10 (now note 6) did require consideration of the "surrounding circumstances." Thus, the court found that "courts need to conduct a broad analysis of the factual context before determining whether the provision can be applied." *Id.* at 1254-55. Indeed, the court observed, "[T]here would be no need to look to 'surrounding circumstances' if any instance of legal, non-sporting use automatically rendered the provision inapplicable." *Id.* at 1255. A focus on the word "solely" in the first half of the guideline, the court added, "eviscerates any distinction between possession and use and would render the second part of the provision redundant because any non-sporting use, lawful or otherwise, would preclude application of the provision." *Id.* The court also noted that one of the "surrounding circumstances" identified in the application note is "actual use," further suggesting that "actual use" must be considered in the context of the whole record, not simply in isolation. *Id.*

The court in *Collins* then explained,

> [W]hile the purpose of possession may be informed by actual use, the fact that a firearm has inherent monetary value that Collins exploited briefly on two occasions does not alter the nature of his purpose in possessing the firearm in the first place. Actual use is but one of the "surrounding circumstances" by which the meaning of "lawful sporting purpose" is to be evaluated. "[T]he application note requires the court to examine the totality of the circumstances,

including the specific circumstances of possession and actual use, rather than relying on a single factor to preclude application of the guideline." *Id.* While consistent and repeated non-sporting use would suggest that one of the purposes of possession was a non-sporting one, precluding application of § 2K2.1(b)(2), that is not the case here. Momentary exploitation of a rifle's inherent monetary value or physical properties within the broader context of possession for lawful sporting purposes should not, ipso facto, preclude application of the provision where the firearm has never been used as a firearm for offensive or defensive purposes, or for any unlawful purpose. As for the second element, unlawful use, it is uncontested that Collins did not use or discharge the firearm in an unlawful manner.

*Collins*, 313 F.3d at 1255. The court explained, further, that *unlawful* use of a firearm would automatically preclude application of the guideline, but that *lawful* use may or may not, depending on the purpose of the defendant's possession, as determined by surrounding circumstances. *Id.* at n.2. The court in *Collins* then found that its reading of § 2K2.1(b)(2) was consistent with the plain meaning and purpose of the provision, which it found was to punish innocent possession and use of a firearm less severely than improper use. *Id.*

Ultimately, in *Collins*, the court concluded that there was ample evidence that the gun in question was acquired and used for hunting purposes, and that even cases cited by the prosecution (most of which are cited above here), which supported the prosecution's desired result, did not support the prosecution's analytical method, because they actually "support the view that the court must look to the broad context of possession to determine whether application of the provision is precluded." *Id.* at 1256. The court held that the sentencing court was incorrect to find that the reduction was precluded by two instances of lawful, non-sporting use, and remanded for the sentencing court to determine whether,

13

in view of the surrounding circumstances, the purpose of the defendant's possession was solely a lawful sporting one and whether any use was unlawful. *Id.*; *see also United States v. Gaines*, 276 F. Supp. 2d 570, 273-74 (N.D. W. Va. 2003) (also holding that a defendant's lawful non-sporting use of a firearm does not automatically disqualify the defendant from the § 2K2.1(b)(2) reduction, because the non-sporting use should be "carefully examine[d]" within the context of the defendant's overall use of the firearm, and holding that the defendant's pawning of his firearms, one of which might be considered collectible, to obtain money to pay bills, after years of possessing them for hunting and sporting purposes, where there was no evidence any non-sporting use other than pawning, and no evidence of use for an unlawful purpose, did not preclude the reduction, and all of the surrounding circumstances showed that the defendant should receive the reduction).

Here, considering "the broad context of possession to determine whether application of the [§ 2K2.1(b)2) reduction] is precluded," *Collins*, 313 F.3d at 1256; *accord* U.S.S.G. § 2K2.1(b)(2), cmt. n.6 (stating that application of § 2K2.1(b)(2) must be determined "by the surrounding circumstances"); *Lussier*, 423 F.3d at 843 n.4 (citing this application note); *Bertling*, 510 F.3d at 811 (unlawful user of controlled substances in possession of a firearm case also citing this application note), I find that pawning of four of the eleven firearms at issue in the felon in possession of a firearm charge against the defendant (and even his prior sale of approximately fifteen other firearms) does not preclude application of the § 2K2.1(b)(2) reduction in this case. For the reasons stated above, I find that Visser *possessed* the firearms in question *solely* for collecting and sporting purposes and that any exception to the collecting purpose was for sporting purposes; his *use* of the firearms by lawfully pawning some of them to raise money to pay medical bills and to purchase a gift for his daughter, then never redeeming them, did not change the purpose of *possessing* the firearms, and was not an unlawful *use*. *Cf. Collins*, 313 F.3d at 1254-56 (§ 2K2.1(b)(2)

requires consideration of both the defendant's *possession* and *use* of the firearms, and the defendant's use of his rifle as collateral in two isolated instances to secure repairs to his automobile was not inconsistent with possession "solely for lawful sporting purposes"). The result might be different, if the "surrounding circumstances" showed that a defendant repeatedly used his "collection" of firearms to obtain money by pawning the firearms, and then redeeming them, such that the purpose of possessing the "collection" was really to have a ready source of collateral to obtain money when needed. *See id.* 1255 (noting that "consistent and repeated non-sporting use would suggest that one of the purposes of possession was a non-sporting one, precluding application of § 2K2.1(b)(2)," but not finding such circumstances in that case). Those circumstances are not present here.

Indeed, I cannot fathom the logic that leads to the conclusion that a felon who lawfully divests himself of firearms, for example, by lawfully selling or pawning them, after possession that plainly would otherwise meet the requirements of § 2K2.1(b)(2), has somehow changed the purpose of his possession sufficiently to disqualify him from a § 2K2.1(b)(2) reduction. I agree with Visser that, at least in the circumstances presented here, the manner in which he disposed of the firearms did not change the purpose of his possession of the firearms. Surely, if the purpose of § 2K2.1(b)(2) is "to punish innocent possession and use of a firearm less severely, and improper use more severely,'" *see Collins*, 313 F.3d at 1255 (quotation marks and citations omitted), and the purpose of the prohibition of possession of firearms by felons in the first place is to keep firearms out of the hands of a potentially dangerous class of persons, *see United States v. Letts*, 264 F.3d 787, (8th Cir. 2001) (citing with favor *United States v. Winchester*, 916 F.2d 601, 606 (11th Cir. 1990), which stated, "The statutory language and legislative history of the Gun Control Act of 1968 [which includes § 922(g)] reveal that Congress' intent was to prohibit the possession of firearms by classes of individuals it deemed dangerous, rather than to

punish persons solely for having a certain status under the law."), then those purposes are undeniably served by not punishing more severely a felon who lawfully divests himself of firearms that he otherwise innocently possessed than he would be punished if he kept the firearms.

Although I hold that Visser is entitled to a § 2K2.1(b)(2) reduction, I also hold, in the alternative, that if he is *not* entitled to such a reduction, he is, in my view, entitled to a downward variance from the 30-37 month advisory guideline sentence that he would face in the absence of such a reduction. The downward variance that I find is appropriate is to the same sentence of three years probation including one year of home detention with electronic monitoring that I am imposing with such a reduction. *See, e.g., Habdash*, 408 F.3d at 1083-84 (although the court concluded that the sentencing court erred in applying § 2K2.1(b)(2), "that error was harmless because the district court stated that it alternatively would depart to the same level if the provision did not apply," and ultimately finding that the alternative departure (or variance) was reasonable based on 18 U.S.C. § 3553(a) factors).

Considering the § 3553(a) factors here, as to nature and circumstances of the offense, *see* 18 U.S.C. § 3553(a)(1), I find that Visser's possession of the firearms was as near "innocent" possession, that is, as near possession "solely" for sporting and collecting purposes, as one can get. As to other § 3553(a) factors, as described on the record at Visser's sentencing hearing, I recognize that I have broader discretion to find that the defendant's health situation is a basis for a variance than to find that it is a basis for a departure, but even so, I do not find his health situation to be particularly significant. On the other hand, I do find the unique situation with his children to be a significant basis for a variance, because the children have been through a lot with the department of social services and the defendant's ex-wife, I find that they are now in a stable environment, and

16

I find that their alternative placement with grandparents is not available, so that it is clearly in the best interests of the children for Visser to continue to care for them. As I indicated elsewhere, Visser's criminal history does not include incidents of gun violence, and his predicate felony is relatively minor, operating a motor vehicle while intoxicated, third offense, and his possession of firearms after that conviction is essentially "innocent," so that probation and home detention are sufficient to reflect the seriousness of the offense and any need for deterrence and protection of the public. On the other hand, I agree with the prosecution that there are aggravating factors, including Visser's failure to acknowledge his felony conviction in applications for firearms, evidence of an alcohol problem, and some evidence of drug use. Nevertheless, balancing the mitigating and aggravating factors, I am satisfied that a sentence of three years probation including one year of home detention with electronic monitoring is sufficient, but not greater than necessary to serve the purposes of sentencing. 18 U.S.C. § 3553(a).

THEREFORE,

1.      The prosecution's objections to application of a reduction in the defendant's offense level pursuant to U.S.S.G. § 2K2.1(b)(2) are **overruled**, and the reduction will apply. Thus, with a § 2K2.1(b)(2) reduction, Visser's adjusted offense level would be 4 (with an adjustment to 6 and a 2-level reduction for acceptance of responsibility), his criminal history category would be III, and his guidelines sentencing range would be 0 to 6 months, and I impose a sentence of three years of probation including one year of home detention with electronic monitoring, with such other terms and conditions as were stated on the record at the time of his sentencing hearing.

2.      In the alternative, if I have improperly granted a § 2K2.1(b)(2) reduction, the defendant's motion for downward variance is **granted**, to arrive at the same sentence I would impose if the § 2K2.1(b)(2) reduction applied.

3.     Upon consideration of the advisory guideline sentence and the 18 U.S.C. § 3553(a) factors, I sentence the defendant to **three years of probation including one year of home detention with electronic monitoring**, with such other terms and conditions as were stated on the record at the time of his sentencing hearing, finding that this sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing.

4.     This Memorandum Opinion And Order Regarding Sentencing shall be attached to and incorporated by reference, in its entirety, into the Statement of Reasons and Judgment in this case.

**IT IS SO ORDERED.**

**DATED** this 15th day of April, 2009.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA